# United States Court of Federal Claims

No. 17-333 C
(Filed: July 18, 2017)
Reissued: August 11, 2017[1]

|  |  |
|---|---|
| REMOTE DIAGNOSTIC TECHNOLOGIES LLC, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant | ) ) ) |
| and | ) ) |
| ZOLL MEDICAL CORPORATION, | ) ) ) |
| Defendant-Intervenor. | ) ) |

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, DC, counsel for plaintiff.

*Adam Eric Lyons*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for defendant.

*Thomas Leo McGovern, III* and *Michael D. McGill*, Hogan Lovells US LLP, Washington, DC, counsel for defendant-intervenor.

**ORDER**

***SMITH*, Senior Judge**

This action is before the Court on defendant-intervenor's Motion to Dismiss. Plaintiff, Remote Diagnostic Technologies, LLC ("RDT"), challenges the Defense Logistics Agency's ("DLA," "Agency," or "government") decision to amend the requirements under Solicitation No. SPE2D1-15-R-0005 (the "Solicitation"). On May 22, 2017, defendant-intervenor, Zoll Medical

---

[1] An unredacted version of this opinion was issued under seal on July 18, 2017. The parties were given an opportunity to propose redactions, but no such proposals were made.

Corporation ("Zoll" or "intervenor"), filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), alleging that RDT lacks standing in this bid protest because its inability to comply with the printer requirements precludes it from maintaining its status as a qualified bidder with a direct economic interest in the Solicitation. For the following reasons, the Court grants defendant-intervenor's Motion to Dismiss.

## I.     Background

On September 11, 2015, DLA issued the Solicitation for "deployable vital signs patient monitors." Complaint for Declaratory Judgment and Preliminary and Permanent Injunctive Relief (hereinafter "Compl.") at 3. The Solicitation provided that the contract would be awarded to the lowest-priced, technically acceptable offeror, and included thirty-three minimum requirements that the deployable vital signs patient monitor ("VSM") must meet in order for an offeror to be eligible for the award. *Id*. Both RDT and Zoll submitted proposals, and the Solicitation was awarded to Zoll on June 28, 2016. *Id*. at 4. RDT filed its first protest with the Government Accountability Office ("GAO") on July 8, 2016, alleging that Zoll's proposal failed to comply with a number of mandatory requirements that should have disqualified it for the award. *Id*.; Administrative Record (hereinafter "AR __") at 5038.

While the initial protest was pending with the GAO, the Agency decided to take corrective action, and amended the Solicitation in order to revise "minimum requirements to eliminate any potential ambiguity or misunderstanding." AR 8586. At the same time, the Agency also determined that additional corrective action was necessary in order "to include a requirement for a printer to be provided with each vital sign monitor, which had been omitted from the original requirement." *Id*. The Agency then issued Amendment 0006 in order to resolve these issues. AR 8462.

RDT filed a second protest with the GAO on November 22, 2016, asserting that the Agency amended the Solicitation in order to ensure that Zoll's proposed monitor would be eligible for the award. AR 5811. On December 20, 2016, while RDT's second protest was pending at the GAO, DLA determined that the printer needed to "meet certain power, weight, and size requirements and print to thermal paper, so as to be appropriate for a deployable environment." United States' Reply in Support of Defendant-Intervenor's Motion to Dismiss Plaintiff's Bid Protest (hereinafter "D's Reply") at 2; AR 8579, 8581. Amendment 0008 was issued in order to ensure that the printer "be less than 300 Cubic Inches in size, weigh less than 7 lbs., and use power of 110-240VAC . . . . and use standard thermal print paper." AR 8505-06.

RTD then filed a supplemental protest with the GAO on December 29, 2016, arguing that the requirements under Amendment 0008 were unduly restrictive. Opposition to Defendant-Intervenor's Motion to Dismiss Plaintiff's Bid Protest (hereinafter "P's Resp.") at 2. The GAO determined that, because RDT could no longer meet the printer requirements required

by Amendment 0008 to the Solicitation, it was no longer an interested party. AR 8512. The GAO dismissed the protest for lack of jurisdiction. *Id*. This protest followed.

Plaintiff filed a complaint in this Court on March 10, 2017, seeking declaratory judgment and injunctive relief. Compl. at 1. In its Complaint, plaintiff asserts the following four counts: (1) the Agency's amendment was arbitrary and capricious; (2) Zoll should be disqualified from the procurement due to its incurable Organizational Conflict of Interest ("OCI"); (3) the Agency engaged in unequal treatment; and (4) Agency bias. Compl. at 19-21. After the government filed the Administrative Record, plaintiff filed a motion for discovery, arguing that the Administrative Record was incomplete and that the amendments to the Solicitation were difficult to explain absent bad faith or bias towards Zoll. *See generally* Plaintiff's Motion for Limited Discovery. This Court held oral argument regarding the Motion for Discovery, and ultimately denied plaintiff's Motion on May 15, 2017.

On May 22, 2017, defendant-intervenor filed a motion to dismiss, arguing that plaintiff lacks standing as it can no longer meet the minimum requirements as set forth in the Solicitation. *See generally* Defendant-Intervenor's Motion to Dismiss Plaintiff's Bid Protest (hereinafter "MTD"). Defendant-intervenor's Motion is fully briefed and ripe for review.

**II.    Discussion**

    **A.  Standard of Review**

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc* in relevant part).

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1) which requires the bid protest to be brought by an "interested party." A protestor is an "interested party" if it is an "(1) actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract." *Id.*; *see also Info. Tech. & Appl. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a

'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *see also Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1580 (Fed. Cir. 1996). The nature of the protest will dictate the necessary factors for a "direct economic interest." *Sys. Appl. & Techs. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012). In pre-award protests, the plaintiff must show "a 'non-trivial competitive injury which can be addressed by judicial relief.'" *Weeks Marine*, 575 F.3d at 1362 (quoting 28 U.S.C. § 1491(b)(1) (2012)).

### B. Printer Requirements

Defendant-intervenor's argument that plaintiff lacks standing turns on the fact that RDT cannot meet the printer requirements proscribed by Amendment 0008 of the Solicitation. MTD at 21-22. Plaintiff rebuts defendant-intervenor's argument by asserting that the printer requirements are unduly restrictive, and a determination of whether those requirements are unduly restrictive should be reserved for a motion for judgment on the administrative record. P's Resp. at 10. Essentially, plaintiff is asking this Court to delay its jurisdictional determination until after plaintiff has had the opportunity to argue its case on the merits.

While, as a general rule, motions to dismiss do not include arguments on the merits, a determination of whether the printer requirements are unduly restrictive is of paramount importance to whether or not the plaintiff even has standing to protest the Agency's actions. Jurisdiction is a threshold matter that must be resolved before the Court can take action on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Essentially, the plaintiff is asking this Court to apply the long-dead "'doctrine of hypothetical jurisdiction'" by "'assuming' jurisdiction for the purposes of deciding the merits." *Id*. This Court's skills do not involve the reanimation of dead bodies of doctrine. As such, the Court must determine whether plaintiff has standing before it can proceed to a decision on the merits.

In order to determine whether plaintiff has standing, this Court must first assess whether the printer requirements are unduly restrictive. When examining components of a solicitation, it is important to note that agency deference is a cornerstone of the solicitation process. DLA provided bidders with its minimum requirements through the Solicitation and its subsequent amendments. "[T]he determination of an agency's minimum needs 'is a matter within the broad discretion of agency officials . . . and it is not for this court to second guess." *Geo-Med, LLC v. United States*, 126 Fed. Cl. 440, 449 (2016) (quoting *Savantage Fin. Serv. Inc. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010)) (further citation omitted). Other than the mere assertion that the printer requirement is unduly restrictive, plaintiff has not presented this Court with any evidence to support that assertion. However, the Administrative Record provides this Court with an abundance of evidence to support the government's position that the size, weight, and thermal paper constraints are part of the necessary minimum requirements in order for the VSM to serve its intended function. Whether or not the printer requirements are unduly restrictive directly relates to the threshold issue of plaintiff's standing, as plaintiff has admitted it cannot meet that requirement, and the Administrative Record supports a finding that Amendment 0008 was issued

so that the Solicitation would meet the Agency's minimum needs. As such, this Court will not encroach upon DLA's deference by finding otherwise.

When RDT filed its Response to defendant-intervenor's Motion to Dismiss, it was presumably well aware of the contents of that motion. Defendant-intervenor dedicated a significant portion of its Motion to arguing that the printer requirements are not unduly restrictive, but, instead, necessary in order to meet the Agency's minimum needs. MTD at 10-16. The plaintiff made a decision to reserve the majority of its argument regarding the unduly restrictive nature of the printer requirements for a motion for judgment on the administrative record. Of course, a party is not required to respond to all of the arguments put forth in an opposing party's motion. However, the Court was left with no evidence to support the plaintiff's assertion and an abundance of evidence to support the government's position that the printer requirement was necessary. Delaying a jurisdictional finding in order deal with the merits would directly controvert 28 U.S.C. § 1491(b), which requires courts "give due regard . . . to the need for expeditious resolution of the [bid protest] action." 28 U.S.C. § 1491(b)(3) (2012). Furthermore, "the court has broad discretion to manage its docket," including discretion to determine in what order it will hear certain arguments. *Young v. United States*, 94 Fed. Cl. 671, 676 n.3 (2010) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Having made a determination that the printer requirements are not unduly restrictive, this Court will now address whether or not plaintiff has standing to bring this protest.

### C. Standing

In order to establish standing in bid protest actions, a protester must be an interested party. 28 U.S.C. § 1491(b)(1) (2012). An "interested party" is an actual or prospective bidder with a direct economic interest in the solicitation. *Weeks Marine*, 575 F.3d at 1361. To prove a direct economic interest, the bidder must either show that there exists a "non-trivial competitive injury which can be addressed by judicial relief" or "establish that it had a 'substantial chance' of receiving the contract." *Id.* at 1361-62; *see also Info. Tech. & Appl.*, 316 F.3d at 1319. A bidder's likelihood of receiving the award must be more than a "mere possibility" in order for it to qualify as substantial. *Draken Int'l, Inc. v. United States*, 120 Fed. Cl. 383, 392 (2015).

In its Motion to Dismiss, defendant-intervenor argues that plaintiff lacks standing because it does not have a direct economic interest in the procurement. MTD at 19. In making that argument, defendant-intervenor asserts that RDT is a nonresponsive and noncompliant bidder. *Id.* at 20. The Federal Circuit held in *Bannum, Inc. v. United States*, that "[a] nonresponsive bidder is the epitome of one who lacks a direct economic interest." 2014 WL 1373739, at 4* (Fed. Cl. Apr. 8, 2014) (*Bannum I*) (quoting *United States v. Int'l Bus. Machs.*, 892 F.2d 1006, 1012 (Fed. Cir. 1989)), *aff'd on other grounds*, 779 F.3d 1376 (Fed. Cir. 2015). This Court has further held that "an offeror that submits a non-compliant offer has no standing to protest an award, because it has no chance of receiving the award." *Bannum, Inc. v. United States*, 115 Fed. Cl. 148, 148 (Fed. Cl. Aug. 13, 2014) (*Bannum II*), *aff'd on other grounds*, 779 F.3d 1376 (Fed. Cir. 2015).

By its own admission, RDT cannot meet the printer requirement set out in Amendment 0008 of the Solicitation.  Compl. at 18.  Amendment 0008 sets forth specific size and weight constrictions and requires the printer use thermal paper, and "RDT cannot presently meet these new printer requirements." *Id*.  The "Tempus Pro is not currently capable of printing to an accessory printer[] that uses thermal paper, is battery operated, and meets the size, weight and power requirements defined in Requirement 23e."  AR 10172.  As such, RDT is a nonresponsive and noncompliant bidder, ineligible for the award.

As a nonresponsive and noncompliant bidder, RDT lacks a direct economic interest in the award and cannot be classified as an interested party.  *Bannum I*, 2014 WL 1373739, at 4; *see also Weeks Marine*, 575 F.3d at 1361.  In order to proceed to a decision on the merits, this Court would be forced to apply the doctrine of hypothetical jurisdiction, which would only serve to belabor the judicial process.  RDT has admitted that it cannot meet the Solicitation's minimum requirements.  Courts consistently afford agencies broad deference to determine their minimum needs.  In keeping with that deference, this Court rejects the plaintiff's position that the printer requirements are unduly restrictive.  RDT does not have standing to sue, and, therefore, this case must be dismissed pursuant to RCFC 12(b)(6).

### III.  Conclusion

For the reasons set forth above, defendant-intervenor's MOTION to Dismiss is **GRANTED**.  The Clerk is directed to enter judgment in favor of defendant-intervenor, consistent with this Opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge

---

[2] This opinion shall be unsealed, as issued, after August 2, 2017, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.